1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   TERRANCE MARSH,                      Case No. 1:22-cv-00508-JLT-CDB
12                Plaintiff,              THIRD SCREENING ORDER AND FINDINGS
                                          AND RECOMMENDATIONS DISMISSING
13         v.                             PLAINTIFF'S INTENTIONAL INFLICTION
                                          OF EMOTIONAL DISTRESS CLAIM
14   BANK OF SIERRA, INC. et al.
15                Defendants.             (ECF No. 12)
16                                        **TWENTY-ONE DAY DEADLINE**
17
18

19         Plaintiff Terrance Marsh ("Plaintiff") is proceeding *pro se* and *in forma pauperis* in this

20   action against Defendants Bank of Sierra, Inc., Margaret Droese, and Karen Mitchell

21   ("Defendants").  Before this Court is Plaintiff's second amended complaint.  (ECF No. 12).

22   Accordingly, the Court shall screen Plaintiff's second amended complaint.

23   **Procedural Background**

24         On April 29, 2022, Plaintiff filed a complaint against Defendants for a violation of the

25   Equal Protection Clause and a claim of discrimination under Title III of the Americans with

26   Disabilities Act ("ADA").  (ECF No. 1).  That same day, Plaintiff filed a motion to proceed *in*

27   *forma pauperis* ("IFP") and an application for permission for electronic filing.  (ECF Nos. 3-4).

28   On May 4, 2022, the Court granted Plaintiff's application to proceed IFP.  (ECF No. 6).  The

Court held pursuant to 28 U.S.C. § 1915(e)(2), the Court would conduct an initial review of Plaintiff's complaint in due course to determine whether it was legally sufficient under the applicable pleading standards. *Id.* On May 10, 2022, the Court denied Plaintiff's request for permission to file electronically. (ECF No. 7).

On May 13, 2022, the Court conducted a screening of Plaintiff's complaint. (ECF No. 8). The Court held Plaintiff sufficiently alleged a claim for violation of the Equal Protection Clause. *Id.* at 5. However, the Court found Plaintiff failed to allege facts sufficient to confer standing on Plaintiff to seek injunctive relief as to his Title III ADA claim. *Id.* at 5-7. The Court provided the applicable pleading standards for Plaintiff's purported claims and directed Plaintiff to file a first amended complaint or notify the Court that he wished to stand on his complaint and proceed only on his Equal Protection Claim. *Id.* at 7-8.

On May 31, 2022, Plaintiff filed a first amended complaint against Defendants for (1) a claim of discrimination under Title VII of the Civil Rights Act of 1964, (2) a claim of discrimination under Title VII of the ADA, and a claim of retaliation under Title VII of the ADA. (ECF No. 9). In addition, Plaintiff filed a motion for reconsideration of Plaintiff's application for electronic filing. (ECF No. 10).

On July 28, 2022, the Court conducted a screening of Plaintiff's first amended complaint. (ECF No. 11). The Court found that despite the explicit recitation of the deficiencies of the original complaint, Plaintiff failed to state a claim under the ADA. *Id.* at 2. In addition, Plaintiff's amended complaint no longer pled a cognizable claim. *Id.* Plaintiff ostensibly withdrew his claim for a violation of the Equal Protection Clause and added an additional claim for violation of Title VII of the Civil Rights Act of 1965, which was not sufficiently pled. *Id.* The Court granted Plaintiff "one final opportunity" to amend the allegations only as to his ADA claim. *Id.* The Court instructed Plaintiff that he could not use leave to amend for the purpose of changing the nature of his suit or adding unrelated claims. *Id.* at 6-7 (citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints)).

On August 29, 2022, Plaintiff filed a second amended complaint against Defendants now at issue. (ECF No. 12).

1    **Preliminary Screening**

2         Plaintiff, who is proceeding without counsel in this action, was granted status to proceed

3    IFP in this action.  (ECF No. 6).  *See* 28 U.S.C. § 1915(a) (authorizing the commencement of an

4    action "without prepayment of fees or security" by a person who is unable to pay such fees).

5    However, the determination that a plaintiff may proceed without payment of fees does not

6    complete the Court's inquiry.  Pursuant to 28 U.S.C. § 1915(e)(2)(B), federal courts must screen

7    IFP complaints and dismiss any case that is "frivolous or malicious," "fails to state a claim on

8    which relief may be granted" or seeks monetary relief against an immune defendant.  *See Lopez v.*

9    *Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (*en banc*) ("[S]ection 1915(e) not only permits but

10   requires a district court to dismiss an [IFP] complaint that fails to state a claim.").

11        A complaint must contain "a short and plain statement of the claim showing that the

12   pleader is entitled to relief…" Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

13   required but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

14   conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

15   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint may be dismissed as a matter

16   of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2)

17   insufficient facts under a cognizable legal theory.  *See Balisteri v. Pacifica Police Dep't*, 901 F.2d

18   696, 699 (9th Cir. 1990).

19        Pleadings by self-represented litigants are to be liberally construed.  *See Haines v. Kerner*,

20   404 U.S. 519, 520-21 (1972).  However, "the liberal pleading standard . . . applies only to a

21   plaintiff's factual allegations," not his legal theories.  *Neitzke v. Williams*, 490 U.S. 319, 330 n .9

22   (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential

23   elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d

24   1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not

25   required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681

26   (9th Cir. 2009) (internal quotation marks & citation omitted).

27   ///

28   ///

3

1   **<u>Summary of Plaintiff's Second Amended Complaint</u>**

2       According to Plaintiff's second amended complaint, Plaintiff is a black male and military

3   veteran.  (ECF No. 12).  In 2019, Plaintiff opened a checking account with Bank of Sierra.  *Id*. at

4   ¶ 2.  On October 29, 2019, Plaintiff claims he had undergone "foot surgery" and/or a "foot

5   procedure."  *Id*. at ¶ 3.  Later that day, Plaintiff attempted to deposit a check at a Bank of Sierra

6   branch located at California City Blvd, California, 93505.  *Id*. at ¶¶ 1-2, 12.  The purported check

7   was from Home Depot, in the amount of $2,500, for the return of defective equipment.  *Id*. at ¶¶

8   1-2.

9       Plaintiff alleges to prevent a "painful experience after having a foot procedure earlier that

10  day," he attempted to deposit the check at the drive-thru service window of the bank but was

11  denied.  *Id*. at ¶¶ 3-4.  An unnamed bank teller told Plaintiff her supervisor Karen Mitchell

12  ("Mitchell") refused to allow Plaintiff to deposit a check at the drive-up window and Plaintiff

13  would need to come into the bank to make a deposit.  *Id*. at ¶ 4.  Plaintiff claims the unnamed

14  teller and Mitchell saw Plaintiff was black and had no intention of providing service to Plaintiff.

15  *Id*.  Soon after, Plaintiff walked into the bank and attempted to deposit the check at the counter

16  with bank employee Margaret Droese ("Droese").  *Id*. at ¶ 15.

17      Plaintiff claims Droese "was extremely aggressive and rude" toward Plaintiff as he

18  attempted to deposit his check.  *Id*.  Plaintiff alleges Droese told Plaintiff he needed to write a

19  statement of where and why he had received the check and questioned his health condition and

20  the reason he was given the check.  *Id*. at ¶¶ 15-16.  Plaintiff felt the request and questioning were

21  peculiar and outside of the bank's policy.  *Id*.  Plaintiff claims Droese refused to deposit his check

22  stating, "black people are passing bad checks."  *Id*. at ¶ 17.  Plaintiff left the bank without

23  depositing his check and days later deposited it in another account.  *Id*. at ¶ 5.

24      On October 30, 2019, Plaintiff called the Bank of the Sierra's corporate office

25  headquarters to complain about "the horrible and racist treatment he received" the day before.  *Id*.

26  at ¶ 27.  An hour later, Plaintiff received a call from Mitchell asking Plaintiff "what happened the

27  day before at the branch in California City, CA."  *Id*.  Plaintiff claims he tried to explain but

28  Mitchell "abruptly began calling Plaintiff a liar several times."  *Id*.  Plaintiff alleges Mitchell said,

1    "she didn't care whom Plaintiff called and that she wasn't going to cash, nor deposit the check,

2    and they didn't want 'his kind there,'" and then slammed the phone down loudly causing Plaintiff

3    to suffer ringing in his ears (tinnitus), hearing loss, and symptoms of a heart attack.  *Id*. at ¶¶ 28-

4    32.  Plaintiff asserts he was unable to return to work and had to go to a veteran's affairs hospital

5    because of his interactions with Defendants.  *Id*. at ¶¶ 36, 38-39, 41.

6        Plaintiff claims as a result of Droese and Mitchell's conduct he suffered financial,

7    physical, mental, and emotional pain.  Specifically, Plaintiff alleges he suffers from mental

8    anguish/depression, chest pains, headaches/migraines, nauseousness, tinnitus, sleepless nights,

9    humiliation/embarrassment, defamation, and loss of income.  *Id*. at ¶¶ 48, 52.  Plaintiff seeks

10   $450,000 in damages from Defendants.  *Id*. at 17.

11   **Discussion**[1]

12       In the Court's second screening order, the Court provided Plaintiff "with leave to amend

13   as to a Title III claim only" and that the opportunity to amend was not for the purpose of changing

14   the nature of his suit or adding unrelated claims.  (ECF No. 11 at 6-7).  But in response, Plaintiff

15   brought forth two claims against Defendants in his second amended complaint unrelated to his

16   Title III claim.  Plaintiff asserts a federal claim for racial discrimination in violation of 42 U.S.C.

17   § 1981 of the Civil Rights Act of 1866 ("Section 1981") and a California state cause of action for

18   intentional infliction of emotional distress ("IIED").  *Id*. at 13-17.  Thus, Plaintiff failed to follow

19   the Court's order.

20       Failure to follow a court order can be grounds for dismissal.  In the interest of deciding

21   this case on the merits of Plaintiff's claims, the Court will not dismiss Plaintiff's second amended

22   complaint for failure to follow a court order.  *See Hernandez v. City of El Monte*, 138 F.3d 393,

23   399 (9th Cir. 1998) (the public policy favoring disposition of cases on their merits counsels

24   strongly against dismissal).  However, Plaintiff is forewarned further failure to follow the Court's

25   orders will result in appropriate sanctions up to and including dismissal of this action.

26

27

28       [1] The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of
     the *sua sponte* screening requirement under 28 U.S.C. § 1915.

5

1    Plaintiff has brought forth a sufficient claim for racial discrimination under Section 1981.

2    Section 1981 provides:

3    > All persons within the jurisdiction of the United States shall have the same right in
     > every State and Territory to make and enforce contracts, to sue, be parties, give
4    > evidence, and to the full and equal benefit of all laws and proceedings for the
     > security of persons and property as is enjoyed by white citizens, and shall be
5    > subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
     > kind, and to no other.
6

7    42 U.S.C. § 1981(a).  To state a claim under Section 1981, a complaint must establish that: (1) the

8    plaintiff is a member of a racial minority; (2) the defendant had an intent to discriminate on the

9    basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the

10   statute.  *Peterson v. State of California Dep't of Corr. & Rehab.*, 451 F. Supp.2d 1092, 1101 (E.D.

11   Cal. 2006) (citations omitted).

12   Section 1981 "can be violated only by purposeful discrimination."  *General Bldg.*

13   *Contractors Ass'n Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982), and a plaintiff must plausibly

14   allege "intentional discrimination on account of race."  *Evans v. McKay*, 869 F.2d 1341, 1344

15   (9th Cir. 1989).  A complaint must allege a "direct connection" between a defendant's actions and

16   the claimed discrimination.  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th

17   Cir. 1982).  Moreover, the statute only prevents discrimination as to the enumerated activities in

18   the statute.  The Supreme Court has explained that Section 1981 "has a specific function: It

19   protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and

20   enforce contracts' without respect to race."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474

21   (2006).  "Any claim brought under § 1981, therefore, must initially identify an impaired

22   contractual relationship,' § 1981(b), under which the plaintiff has rights[,]" although "[s]uch a

23   contractual relationship need not already exist."  *Id*. at 476.

24   Plaintiff has alleged a potentially cognizable Section 1981 claim.  First, Plaintiff has

25   alleged he is a member of a racial minority group.  (ECF No. 12 at ¶ 4).  Next, Plaintiff has

26   alleged overt acts of discrimination which create an inference Defendants' conduct was motivated

27   by racial animus.  Specifically, Plaintiff claims Droese's refused to deposit his check stating,

28   "black people are passing bad checks" and Mitchell's alleged comment "they didn't want 'his

6

1    kind' there."  *Id*. at ¶¶ 17, 28.  Taken as true as required at the pleading stage, these allegations

2    support the plausible inference that Defendants possessed an intent to discriminate because of

3    Plaintiff's race.  Lastly, Plaintiff identifies he was in a contractual relationship with Defendants as

4    earlier in the year he opened a checking account with them.  (ECF No. 12 at ¶ 2).  Thus, Plaintiff

5    has sufficiently alleged a potential claim for violation of Section 1981.

6           Plaintiff's allegations are insufficient to state a claim for IIED.[2]  In order to establish a

7    claim for IIED, a plaintiff must show (1) extreme and outrageous conduct by the defendants with

8    the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2)

9    the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate

10   causation of the emotional distress by the defendant's outrageous conduct.  *Hughes v. Pair*, 46

11   Cal.4th 1035, 1050 (Cal. 2009) (citations and quotation marks omitted).  Extreme and outrageous

12   conduct is that which is "so extreme as to exceed all bounds of that usually tolerated in a civilized

13   community," *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (Cal. 1982), and "of a nature

14   which is especially calculated to cause, and does cause, mental distress of a very serious kind."

15   *Christensen v. Superior Ct.*, 54 Cal.3d 868, 905 (Cal. 1991).

16          Plaintiff bases his IIED claim on the allegation that Defendants Droese and Mitchell

17   publicly refused to deposit his check, were rude and hostile, yelled at him, and made racially

18   charged comments.  As a result of Defendants Droese and Mitchell's conduct, Plaintiff claims he

19   felt "embarrassed…angry, humiliated, and disoriented" and "continues to think every day about

20   the incident on October 29, 2019, and October 30th, 2019, and the emotional depression and

21   anger come flooding back."  (ECF No. 12 at ¶¶ 31, 40).  Although Defendants Droese and

22   Mitchell's alleged conduct was insulting, IIED liability "does not extend to mere insults,

23   indignities, threats, annoyances, petty oppressions or other trivialities."  *Hughes*, 46 Cal.4th at

24   1051 (citations omitted).  Plaintiff has failed to allege Defendants' purported conduct was

25

26          [2] Plaintiff has pled a cognizable federal claim.  Thus, the Court may exercise supplemental
     jurisdiction over Plaintiff's state claim for IIED.  *See* 28 U.S.C. § 1367(a) ("in any civil action in
27   which the district court has original jurisdiction, the district court "shall have supplemental
     jurisdiction over all other claims in the action within such original jurisdiction that they form part
28   of the same case or controversy…"

outrageous and that it exceeded all bounds of decency in a civilized society. *See Cochran v. Cochran*, 65 Cal. App.4th 488, 496 (Cal. Ct. App. 1998) (major outrage is still essential to the tort and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt is not enough); *cf. Merrit v. Wells Fargo Bank, N.A.*, Case No. SACV 18-1960 JVS, 2019 WL 1951608, at *6 (C.D. Cal. Mar. 15, 2019) (the court held a bank employee's refusal to process a loan application combined with that employee's alleged invocation of an extremely offensive racial epithet, other insults, and hostile conduct did not constitute extreme and outrageous conduct for the purposes of an IIED claim).  Furthermore, Plaintiff has not included any factual allegations that Defendants intended to cause or recklessly disregarded the possibility of causing severe or extreme emotional distress, which is a necessary element of his claim.  Therefore, Plaintiff's claim for IIED should be dismissed.

**Conclusion**

Plaintiff's second amended complaint states a potentially cognizable Section 1981 claim but fails to state a cognizable IIED claim.  The Court shall recommend dismissal of Plaintiff's IIED claim.  As the Court informed Plaintiff in its first screening order (ECF No. 8), he has a choice on how to proceed.  Plaintiff may file objections to the Court's findings and recommendation if he believes he possesses a cognizable IIED claim.  Alternatively, Plaintiff may choose to stand on his second amended complaint and proceed only on his Section 1981 claim.

Based on the foregoing, the Court HEREBY ORDERS:

1. Within 21 days from the date of service of these findings and recommendations, Plaintiff shall file either:

    a. Objections to the Court's findings and recommendations; or

    b. A notification to the Court in writing that he wishes to stand on his second amended complaint.

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Plaintiff's IIED claim be dismissed with prejudice.

These findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 21 days after being served with these findings and recommendations, Petitioner may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiffs are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 30, 2022**

UNITED STATES MAGISTRATE JUDGE

9